IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PHYLLIS DRISCOLL and 3-D, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SINGING TREE FARMS, INC., BIG SKY CARVERS, LLP, BIG SKY CARVERS, INC., KRISTAN E. BASTA, MARC PIERCE, ELEVATION, LLC, f/k/a THE YELLOWSTONE COMPANY, LLC, BIG SKY CARVERS, LLC, a/k/a BIG SKY CARVERS LIQUIDATION COMPANY, LLC, MONTANA SILVERSMITHS, INC., GROUP MONTANA, INC., MTS GROUP, INC., DD TRADERS, INC. d/b/a DEMDACO, and JANE AND JOHN DOES I-V, <br><br> Defendants. | CV 13–37–BU–DLC <br><br> ORDER |

Before the Court are Defendants' motion for summary judgment on statute of limitations and Defendants' motion to dismiss. The Court grants the motions in part and denies them in part. Except for Plaintiffs' claim for bailment, all claims are barred by the applicable statute of limitations. The claim for bailment fails to state a claim. Accordingly, all of Plaintiffs' claims are dismissed.

1

**Factual Background**

The material facts in this case are straightforward and are not in dispute.[1] Plaintiff Phyllis Driscoll is a sculptor and an independent contractor, and the President of Plaintiff 3-D, Inc. Plaintiffs ("Driscoll") bring this diversity action against Defendants, which are corporate entities engaged in the business of marketing, selling, reproducing, and/or distributing sculptures.

Beginning in 1996, Driscoll, as an independent contractor, began sculpting figurines for Defendant Singing Tree Farms, Inc. ("Singing Tree"), a company owned and run by Kris and Ray Basta. Effective January 1, 2000, Singing Tree and a company called Big Sky Carvers, LLP, merged and formed Big Sky Carvers, Inc. ("BSCI"). Singing Tree and Big Sky Carvers, LLP ceased to exist upon the merger.

In early 2000, Kris Basta ("Basta"), on behalf of BSCI, approached Driscoll about a new project that BSCI had with another corporate entity, Defendant Montana Silversmiths, Inc. ("MSS"), to create new products. To effectuate this project, Basta asked and Driscoll agreed to create a horse sculpture for BSCI for a

---

[1] A review of Driscoll's Statement of Disputed Facts, stretching over 53-pages, gives the erroneous impression that the material facts here are hotly disputed. In reality, the relevant material facts for this motion based on statute of limitations are not in dispute and Driscoll's Statement of Disputed Facts frequently exaggerates and unnecessarily complicates a straightforward set of undisputed facts by presenting arguments and evidence that do not serve to oppose the fact.

flat fee.

During these initial discussions, Basta told Driscoll that MSS did not pay a royalty. Basta said to Driscoll, "Montana Silversmiths will never pay a royalty on the horse sculptures." (Doc. 64 at 41.) Basta then added, "Don't even ask because they will never pay a royalty." *Id.* Driscoll was accustomed to a royalty arrangement, and told Basta that she would prefer to earn a royalty rather than a flat fee. Driscoll asked Basta why MSS would not pay a royalty. Basta replied, "That's just the kind of company Montana Silversmiths is." *Id.* at 42.

Sometime around April 21, 2000, Driscoll asked Basta again if she could earn a royalty for the horse sculpt instead of a flat fee. Basta responded, "No, this company will never pay a royalty, they just won't, it's Montana Silversmiths, they just will not pay a royalty." *Id.*

On later occasions, between the years 2000 and 2002, Basta and other BSCI representatives repeated the statement to Driscoll that, "MSS does not pay royalties," and made similar statements. *Id.* In addition, between the years 2000 and 2004, BSCI representatives made similar statements regarding royalties to Driscoll's husband, Marc Driscoll.

Basta did not inform Driscoll that BSCI had entered into a royalty agreement with MSS, effective January 1, 2000, in which BSCI agreed to provide

certain services to MSS to develop a cowboy giftware line of products in exchange for an 8.5% royalty on the sale of each product developed, created, or designed by BSCI.  This agreement resulted in BSCI earning an 8.5% royalty on the sale of each of Driscoll's horse sculpts.  Driscoll understood that BSCI was providing consulting services to MSS.

Each time Driscoll presented a horse sculpture to BSCI, she was paid a flat fee and entered into a written agreement entitled, "Perpetual Grant of Reproduction Rights" ("PGRR").  Driscoll understood that the rights she transferred to BSCI would then be assigned by BSCI to MSS.  This assignment from BSCI to MSS was reflected in the bottom portion of each PGRR.  Each PGRR that Driscoll signed provided, "Artists has been compensated in full for the Artist's involvement in the Master and such Master shall not be, now or ever, subject to any royalty payments." (Doc. 33-4 at 3.)

In mid-May 2011, Driscoll learned that MSS paid royalties to artists.  On April 30, 2013, Driscoll initiated this action against Defendants for fraud, constructive fraud, deceit, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of contract/license, voidable title, bailment, copyright infringement, Lanham Act claims, and declaratory judgment.

## Legal Standard

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986).  A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.  Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.  In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252.

**Discussion**

It is undisputed that all of Driscoll's claims are subject to, at most, an eight year statute of limitations.[2] It is also undisputed that all of the alleged misrepresentations regarding MSS's royalty policy were made between the years 2000 and 2004. Thus, in order for Driscoll's claims to be within any applicable statute of limitations period, and survive summary judgment, a tolling doctrine must be applicable.

Driscoll contends the discovery rule should toll the applicable statute of limitations periods on all of her claims until 2011 when she first learned that MSS paid a royalty to artists for sculpts. Driscoll also contends Defendants' mere silence with respect to their royalty arrangement is sufficient to toll the statute of limitations.

---

[2] The SOL for fraud is two years. Mont. Code Ann. §27-2-203. The SOL for constructive fraud is two years. *Osterman v. Sears Roebuck & Co.*, 80 P.3d 435, 440 ( Mont. 2003). The SOL for deceit where, as here, a penalty is not sought is three years. Mont. Code Ann. § 27-2-204. The SOL for breach of the implied covenant of good faith and fair dealing is three years. *St. ex rel Egeland c. City Council of Cut Bank, Mont.*, 803 P.2d 609, 611 (Mont. 1990). The SOL for a claim of unjust enrichment is three years. *N. Cheyenne Tribe v. Roman Catholic Church ex rel. Dioceses of Great Falls/Billings*, 296 P.3d 450, 458 (Mont. 2013). The SOL for a breach of a written contract or license is eight years. Mont. Code Ann. § 27-2-202(1). The Court assumes for purposes of analysis that a claim for "voidable title" exists and that its SOL is eight years. The SOL for copyright infringement is three years. 17 U.S.C. § 507(b). The SOL for Driscoll's Lanham Act claim is two years. *See Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1140 (9th Cir. 2010); Mont. Code Ann. § 27-2-203. The Court assumes for purposes of analysis that the SOL for Driscoll's Declaratory Judgment claim is three years, as Driscoll asserts. For the reasons explained below, Driscoll's claim for bailment is dismissed for failure to state a claim rather than on a statute of limitations ground.

"The discovery rule provides that a limitations period does not begin until the party discovers, or in the exercise of reasonable diligence, would have discovered, the facts constituting the claim." *Draggin Y Cattle Co., Inc. v. Addink*, 312 P.3d 451, 456 (Mont. 2013). "However, this rule only applies when the facts constituting the claim are concealed, self concealing, or when the defendant has acted to prevent the injured party from discovering the injury or cause." *Id.*

The facts constituting Driscoll's claims are not by their nature concealed or self-concealing. The things alleged to be concealed from Driscoll were whether MSS paid a royalty for sculpts, and the terms of the contract for services between MSS and BSCI. Basta represented that MSS did not pay a royalty, but Driscoll concedes that she never asked MSS whether it in fact paid a royalty. She also never asked whether BSCI would receive a royalty for the services it provided to MSS.[3] Furthermore, there is no evidence presented that MSS would have concealed its royalty policy from Driscoll had she asked. In the end, Driscoll did not learn that MSS paid a royalty by uncovering some secret; she learned this information through a conversation with another artist and through her conversation with an MSS representative. It cannot be said that the truth about

---

[3] Driscoll provides no evidence that, even if she had asked, she would have been legally entitled to this information about the terms of the contractual relationship that she was not a party to between two other private entities.

7

Basta's representations was by its nature concealed or self-concealing.

Cases finding that a claim was concealed or self-concealing are easily distinguished from the case at bar. This is not a case about an attorney-client relationship involved in a complex legal transaction, as in *Watkins Trust v. Lacosta*, 92 P.3d 620 (Mont. 2004), or a doctor-patient relationship and a patient's medical test results, as in *Blackburn v. Blue Mt. Women's Clinic*, 951 P.2d 1 (Mont. 1997), or an accountant-client relationship and information about an invalid trust agreement, as in *McCormick v. Brevig*, 980 P.2d 603 (Mont. 1999), or an accountant-client relationship and whether an exchange of property qualified under § 1031 of the tax code for tax exempt status, as in *Draggin Y. Cattle*. *See also Wisher v. Higgs*, 849 P.2d 152, 157 (Mont. 1993) *overruled on other grounds by Blackburn*, 951 P.2d at 10. This is a case about an arm's-length business deal. Basta, as a representative for BSCI, allegedly made misrepresentations about a third-party's policy with respect to paying a royalty. In order to discover whether or not Basta's representation about MSS's royalty policy was accurate, all that Driscoll had to do was to make a phone call to MSS, and ask a single, simple question: "Does MSS ever pay a royalty?" It is not as if MSS was some shadowy company to which Driscoll had no access. Rather, Driscoll admits that she had MSS's contact information all along. Plainly, the facts constituting Driscoll's

8

claims are not by their nature concealed or self-concealing.

The Court also concludes that Defendants did not act to prevent Driscoll from discovering the facts underlying her claim. The best evidence Driscoll offers in support of her position in this regard is that Basta told her, "Don't even ask because they will never pay a royalty." But this is insufficient under Montana law to toll the statute of limitations period.

Basta's statement did not prevent Driscoll from discovering whether or not MSS paid a royalty. Despite Basta's statement, Driscoll could still determine whether or not MSS paid a royalty, simply by asking MSS. Basta did not tell Driscoll that MSS could not be contacted, or attempt to obscure how MSS could be contacted. Driscoll had MSS's contact information. Thus, she had all the information necessary to discover the facts underlying her claim and the discovery rule does not apply. *Schupak v. New York Life Ins. Co.*, 780 F.Supp. 1328, 1333 (D.Mont. 1991)(citing *Holman v. Hansen*, 773 P.2d 1200, 1203 (1989)).

Nor does it matter that Basta repeated these misrepresentations. Driscoll had a duty to pursue discovery of the facts underlying her claims through the exercise of reasonable diligence. *Draggin Y. Cattle Co., Inc.*, 312 P.3d at 456; *Osterman v. Sears Roebuck & Co.*, 80 P.3d 435, 441 (Mont. 2003). Repeatedly inquiring of Basta whether MSS paid a royalty does not constitute reasonable

diligence under the circumstances. Reasonable diligence in the context of this arm's-length business deal required Driscoll to go to the source and to ask MSS whether or not it paid a royalty. Driscoll wanted a royalty. In order to discover if she could get one, she should have asked MSS if this was possible. Driscoll failed to do this and thus she failed to exercise reasonable diligence in discovering the facts underlying her claim. Accordingly, the statute of limitations was not tolled.

Driscoll also argues that the doctrine of fraudulent concealment applies to toll the limitations period. The Montana Supreme Court has said that "[f]raudulent concealment consists of 'the employment of artifice planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a cause of action.'" *Cartwright v. Equitable Life Assur. Soc. of U.S.*, 914 P.2d 976, 986 (Mont. 1996)(quoting *E.W v. D.C.H.*, 754 P.2d 817, 821 (Mont. 1988), *superseded by statute*). But unlike *Cartwright* and other cases in which a party's fraudulent concealment was found to toll the statute of limitations period, here there is no professional-client or similar relationship by which Driscoll was entitled to rely on the information about MSS's royalty policy given to her by Basta. This was an arm's-length transaction and Basta's representations pertained to the royalty policy of some other entity. Driscoll was not entitled to rely on this information in the same way that an insured may rely on

10

assurances from his insurance agent about a confusing insurance policy, *see Cartwright*, 914 P.2d at 986-87, or a client is entitled to rely on assurances from his accountant about a complicated tax arrangement, *see Draggin Y Cattle Co., Inc.*, 312 P.3d at 457. Instead, Driscoll knew from the beginning that she was dissatisfied with the arrangement. Consistent with most of her prior arrangements, she wanted a royalty, and she wasn't getting one. These circumstances were ample to trigger inquiry notice about Basta's representations. As in *Holman*, Basta's "assurances" that MSS would not pay a royalty and direction not to ask, did not obscure from Driscoll the truth about MSS's royalty policy nor the facts underlying her cause of action. *Holman*, 773 P.2d at 1204. The problem Driscoll had with the arrangement was apparent to Driscoll from the outset. Accordingly, the doctrine of fraudulent concealment is inapplicable.

Finally, Driscoll contends that Defendants' "mere silence" about the royalty arrangement between MSS and BSCI was sufficient to toll the statute of limitations period. (Doc. 68 at 20-21.) This theory is based on Driscoll's unsupported allegation that a fiduciary relationship arose as a result of the "bailment relationship between Driscoll, as the bailor, and BSCI and MSS as

bailees." *Id.* Driscoll offers no record evidence of any bailment relationship.[4] For support, she cites only to the allegations in her complaint, which is insufficient to survive summary judgment. *Anderson*, 477 U.S. at 256. Accordingly, Defendants owed Driscoll no fiduciary duty such that mere silence could constitute fraudulent concealment, *see Estate of Watkins v. Hedman*, 91 P.3d 1264 (Mont. 2004), and tolling by fraudulent concealment through silence is inapplicable. Except for her claim for bailment, all of Driscoll's claims are barred by the statute of limitations.

Driscoll's claim for bailment is also dismissed because Driscoll's complaint fails to state a claim for bailment.[5] A claim for bailment derives from Montana statute. Mont. Code Ann. § 70-6-108. The law of bailment generally requires a party to return in proper condition the personal property that was "deposited" with them, or to pay for any damages resulting from wrongful use. *See id.* at §§ 201-

---

[4] In fact, the record evidence is entirely contrary to Driscoll's bailment theory. Driscoll executed twenty-five nearly identical PGRR's each time she presented a horse sculpture to BSCI. The PGRR's assigned to BSCI "a perpetual exclusive right to . . . reproduce, manufacture, distribute, market, sub-license, reassign or otherwise use in any form thereof, the original piece of art." (Doc. 33-4 at 3.) Pursuant to the contract, Driscoll was "compensated in full for [her] involvement in the Master and such Master shall not be, now or ever, subject to any royalty payments." The contract also required Driscoll to "disclaim all rights of ownership to the Master, including ownership of copyrights, trademarks or other intellectual property associated with Master." *Id.*

[5] Driscoll's claim for bailment is not subject to dismissal on statute of limitations grounds because, as explained, taking the allegations in the Amended Complaint as true, it has not yet accrued.

214. The person with whom the property is deposited – the depositary – must, "on demand," return the property to the person who deposited it with the depositary. *Id.* at § 211. There is no duty to deliver the property without a demand. *Id.* at § 212. "A demand is . . . a condition precedent to the right to maintain an action for [the property's] recovery." *Gates v. Powell*, 252 P. 377, 380 (1926); *Viers v. Webb*, 245 P. 257, 259 ("there must be a demand made upon the bailee and a refusal by him before suit can be brought").

Driscoll's Amended Complaint fails to allege that a demand was made by her or a refusal made by any of the Defendants. Therefore, it fails to state a claim. Driscoll, citing dicta from *Viers*, contends that this omission is excused because she has alleged that the property was wrongfully acquired. This argument is unavailing. The dicta cited from *Viers* is contrary to the requirements established by Montana statute. Furthermore, the PGRR's that Driscoll signed when delivering her horse sculpts belie Driscoll's allegation in her complaint that "her parting was temporary." (Doc. 38 at ¶ 117.) The PGRR's granted a "perpetual exclusive" right of reproduction to BSCI. Driscoll and her heirs " disclaim[ed] all rights of ownership to the Master." (Doc. 33-4 at 3.) Driscoll's claim for bailment is unsupported by any record evidence, and it fails as a matter of law because she fails to allege all of its essential elements. While Rule 15(a)(2), Fed.R.Civ.P.,

provides that courts should "freely give leave [to amend] when justice so requires," Driscoll has not sought leave to amend her complaint and, in any case, amendment of this claim would be futile. Accordingly, Driscoll's claim for bailment is dismissed with prejudice.

Except for her claim for bailment, all of Driscoll's claims are barred by the statute of limitations. Her claim for bailment fails to state a claim upon which relief can be granted. Accordingly, all of Driscoll's claims are dismissed.

IT IS ORDERED that Defendants' motion for summary judgment (Docs. 47 and 57) are GRANTED IN PART AND DENIED IN PART as set forth herein.

IT IS FURTHER ORDERED that Defendants' motion to dismiss (Docs. 42 and 51) are GRANTED IN PART AND DENIED IN PART as set forth herein.

All of Plaintiff's claims are DISMISSED WITH PREJUDICE. The Clerk of Court shall enter judgment in favor of Defendants and against Plaintiffs. All other pending motions are DENIED AS MOOT. This case is CLOSED.

Dated this 11th day of February 2015.

Dana L. Christensen, Chief District Judge
United States District Court